Receipt # 065770

ORIGINAL

FILED
DEC - 1 2006
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**GRUNLEY-WALSH, LLC**
**(f/k/a Grunley-Walsh Construction JV)** *

**Plaintiff,** *

**v.** *

**THE UNITED STATES OF AMERICA** *

**Defendant.** *

**Case No. :** 06-815 C
**Judge:**
**(Monument Lodge PEPCO Line Claim)**

* * * * * * * * * * * * *

**COMPLAINT**

Plaintiff, Grunley-Walsh, LLC, formerly known as Grunley-Walsh Construction JV, ("Grunley-Walsh"), by its counsel, Roger C. Jones, Esq., of Huddles Jones Sorteberg & Dachille, P.C., sues the United States of America ("United States"), and for its Complaint in the above matter, respectfully states as follows:

**Jurisdiction**

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1491. Plaintiff brings this action pursuant to the Contract Disputes Act of 1978, as amended, 41 U.S.C. § 601 *et seq.* In addition, this action is related to Case Nos.1:06-cv-00721-CFL and 1:06-cv-00723-CFL, as it arises out of the same contract and, therefore, should be consolidated with Case Nos. 1:06-cv-00721-CFL and 1:06-cv-00723-CFL.

**The Parties**

2. Plaintiff, Grunley-Walsh, is a general contractor in the construction industry organized and existing under the laws of the State of Maryland, with its principal place of business located at 5010 Nicholson Lane, Suite 200, Rockville, Maryland 20852.

3. Defendant is the United States of America.

## The Contract

4. On May 6, 1998, the United States, acting by and through the Department of the Interior – National Park Service, awarded Grunley-Walsh an Indefinite Quantity Contract (Contract No. 1443CX305998901) (the "Contract") to stabilize and preserve the Washington Monument (the "Project"). The Contract is incorporated by reference herein, but is not attached due to its voluminous nature. Defendant has a copy of the Contract in its possession.

5. Pursuant to Contract Modification No. 0007 ("Contract MOD 7"), dated November 15, 2001, the General Provisions to the Contract were deleted and replaced with revised contract clauses which included certain FAR provisions incorporated by reference. A copy of MOD 7 is attached hereto as **EXHIBIT A.** Three of these provisions were the Changes clause (FAR 52.243-04 August 1987), the Differing Site Conditions clause (FAR 52.236-02 April 1986) and the Disputes clause (FAR 52.233-01 December 1998).

6. In accordance with the Contract, on December 5, 2003, Grunley-Walsh was issued Task Order No. T3059989135 ("Task Order No. 35") in the lump sum amount of $13,993,216. Pursuant to Task Order No. 35, Grunley-Walsh was to construct and install an above ground security barrier system at the Washington Monument. More specifically, Grunley-Walsh was to accomplish the work contained in the Project Requirements (Task Order No. 35, Attachment 1) and specifications and drawings prepared under previous Task Order by the Olin Partnership. A copy of Task Order No. 35, including its Attachment 1 Project Requirements is attached hereto as **EXHIBIT B.**

7. The drawings and specifications prepared by the Olin Partnership are dated November 25, 2003 and purport to be the 90% Construction Drawings.

**The Certified Claim for Monument Lodge PEPCO Line Relocation Change Work**

8. This action relates to a September 28, 2006 certified claim, in the amount of $38,428 submitted by Grunley-Walsh to the Contracting Officer (the "Certified Claim") pursuant to the Changes clause, the Differing Site Conditions clause and the Disputes clause in the Contract. A copy of the Certified Claim is attached as **EXHIBIT C**.

9. By letter dated October 18, 2006 (attached as **EXHIBIT D**), the Contracting Officer advised that a Final Decision would not be issued on the Certified Claim until after Grunley-Walsh had submitted all their claim submissions for the Project. Specifically, the Contracting Officer stated in his October 18, 2006 letter he would be "issuing one final decision after we have received the final claim in the series." In doing so, the Contracting Officer did not provide a time and/or a date certain for when a Final Decision on the Certified Claim could be expected.

10. Based on the Contracting Officer's October 18, 2006, letter the time within which the Contracting Officer will issue a Final Decision is left open ended.

11. As permitted by the Contract Disputes Act, more than 60 days has elapsed since submission of the Certified Claim; there has been no Final Decision issued on the Certified Claim; and the Contracting Officer has not committed to a date by when a Final Decision on the Certified Claim will be issued. As such, the Certified Claim is deemed denied.

**Factual Background for the Certified Claim**

12. To prepare the November 25, 2003 construction drawings and to identify the work required in Task Order No. 35, the Olin Partnership was issued existing background drawings by the National Park Service.

13. Among other things, the background drawings indicated an underground electrical line running from existing vaults adjacent to the Washington Monument Lodge in an eastward direction just north of the existing Monument Lodge structure. However, the background drawings did not provide elevation information for the electrical line.




11-25-03 Contract Drawing Excerpt – Sheet L5.4

14. As excavation work was being performed for the Monument Lodge perimeter wall footings, Grunley Walsh's subcontractor, Cherry Hill Construction, dug test pits in the areas where the background drawings indicated potential conflicts with existing utilities.

15. The electrical line shown in the background drawings (see excerpt form Drawing Sheet L5.4 above) was not found when the test pit for the area in question was excavated. However, an electrical (i.e. PEPCO) line was found in a different location (not shown on the background drawings – see notes on excerpt of drawing above) and its elevation was not deep enough to avoid conflict with the new wall footings.



11/2004 Approximate Location of Existing PEPCO Line Conflict

16. Further, the existing PEPCO electrical line (not shown on the background drawings) was in a deteriorated condition. As such, PEPCO would not permit a simple lowering of the existing electrical line. Rather, a new line had to be installed, which was relocated so as to avoid interference with the footings for the new wall to be installed.

17. The Task Orders issued for Olin Partnership to prepare the Project design did not require the Olin Partnership to perform an analysis in connection with the development of the Project design to confirm whether the representations made by the National Park Service regarding the location of underground utilities were correct. Given these facts, and because the Contract contained a standard Government Differing Site Conditions clause, Grunley-Walsh reasonably believed they would be provided an equitable adjustment for unknown differing site conditions, when and if they were encountered.

18. The drawings provided by the National Park Service affirmatively represented the location of utility lines in the vicinity of the Monument Lodge. The drawings, however, failed to indicate the actual location of the line which ultimately conflicted with the footings for the Monument Lodge wall.

19. The affirmative representations in the drawings provided by the National Park Service regarding the location of the utility lines near the location of the Monument Lodge reasonably induced Grunley-Walsh and its subcontractors into believing no electrical line would be encountered where the existing PEPCO line was actually located.

20. After Grunley-Walsh's submission of the costs to perform the change work to relocate the PEPCO line, in an undated letter received from the Park Service (see **Exhibit 2** to the Certified Claim), the Park Service stated, "the relocation of the utility is part of the contract requirements." Grunley Walsh disputes this statement.

21. Pursuant to the Contract's Dispute clause and the Contract Disputes Act, on September 28, 2006, Grunley-Walsh submitted its Certified Claim for the Monument Lodge PEPCO Line Relocation change work; requesting a Contracting Officer's Final Decision on the matter.

22. All conditions precedent for the filing of this action have been satisfied, waived and/or excused.

**COUNT I**

22. The allegations contained in paragraphs 1 through 22 above are incorporated by reference as through fully set forth herein.

23. In providing the background drawings for the Project design, the Government impliedly warranted the adequacy and suitability for their intended purpose. This implied warranty has been breached by the Government.

24. In accordance with the Contract Differing Site Conditions clause, the Government is required to provide an equitable adjustment for the additional costs stemming from differing conditions encountered on the Project. The Government has failed to comply with this Contract clause.

25. In accordance with the Contract Changes clause, the Government is required to provide an equitable adjustment for additional costs caused by any change to the performance of any part of the work. The Government has failed to comply with this Contract clause.

26. As a result of the foregoing and pursuant to the Contract, Grunley Walsh is entitled to an equitable adjustment in the amount of $38,428, for the additional costs to Perform the Monument Lodge PEPCO Line Relocation change work for the Project.

27. As such, the Government is liable to Grunley-Walsh for $38,428, plus interest thereon as allowed by the Contract Disputes Act.

**WHEREFORE**, Plaintiff, Grunley-Walsh, LLC, demands judgment against Defendant, The United States of America, for award of damages in the amount of $38,428, plus such other

and further relief as this Court deems just and proper, including interest as required by the Contract Disputes Act.

Respectfully submitted,

Roger C. Jones

**HUDDLES, JONES**
**SORTEBERG & DACHILLE, P.C.**
10211 Wincopin Circle, Suite 200
Columbia, Maryland 21044
(301) 621-4120
(301) 621-4473 (fax)
jones@hjpc.com

Counsel for Plaintiff,
Grunley-Walsh, LLC

DATED: 12/1/2006