# EXHIBIT 8

Grunley-Walsh

5010 Nicholson Lane, Suite 200
Rockville, MD 20852

RECEIVED
JAN 22 2007
DSC
CONTRACTING SERVICES

# Washington Monument Physical Security System
# Contract No. 1443CX305998901;
# Task Order No. 35

# Certified Claim/Request For Equitable Adjustment to Contract Amount
## Differing Site Conditions - $21,379

# Request For Contracting Officer's Final Decision



**Submitted: January 19, 2007**

Grunley-Walsh

5010 Nicholson Lane, Suite 200
Rockville, MD 20852

RECEIVED
JAN 22 2007
DSC
CONTRACTING SERVICES

January 19, 2007

United States Department of
The Interior – NPS
Denver Service Center
12795 W. Alameda Parkway
P.O. Box 25287
Denver, Colorado 80225-0287
**ATTN: John M. Fox, Contracting Officer**

**RE: Washington Monument Physical Security System**
**Contract No. 1443CX305998901; Task Order No. 35**

**Subj: Certified Claim/Request For Equitable Adjustment to Contract Amount**
**Differing Site Conditions - $21,379**

**Request For Contracting Officer's Final Decision**

Dear Mr. Fox:

Reference is made to our contract for the above Project as well as to Task Order No. 35. Reference is also made to our prior cost submissions for additional work stemming from unforeseen differing site conditions at various locations on the West side of the Project. Although the Park Service has paid for other differing site conditions, to date the five cost proposals that are the subject of this claim continue to remain unaddressed. The unpaid additional cost to perform the change work relating to the differing site conditions that are the subject of these cost proposals total **$21,379**.

Grunley-Walsh is herewith submitting these unpaid additional costs as a Certified Claim / Request For Equitable Adjustment ("REA") in accordance with the Contract Disputes Clause and the Contract Disputes Act. Attached as **EXHIBIT 1** is a complete itemization as well as supporting cost data for the additional costs requested herein. In submitting these claimed costs, we request a Contracting Officer's Final Decision on this matter within 60 days.

**Entitlement Overview**

On May 6, 1998 Grunley-Walsh was awarded an Indefinite Quantity Contract to stabilize and preserve the Washington Monument (Contract No. C3059980901). Pursuant to Contract Modification No. 0007, dated November 15, 2001, the General Provisions to our original contract were deleted and replaced with revised contract clauses which included certain FAR provisions incorporated by reference. Three of these provisions included the Changes clause (FAR 52.243-04 August 1987), the Disputes clause (FAR 52.233-01 December 1998) and the Differing Site Conditions clause (FAR 52.236-02 April 1986).

In accordance with the Contract, on December 5, 2003 Grunley-Walsh was issued Task Order No. T3059989135 (Task Order No. 35) in the amount of $13,993,216. Among other things, Task Order No. 35 required Grunley-Walsh to construct and install an above-ground security barrier system in accordance with certain specifications and drawings prepared under a previous Task Order by the Olin Partnership.[1] This included the construction of elements contained on NPS Drawing No. 807-41032. These drawings included the 90% construction documentation that existed as of November 2003. To prepare these drawings and to identify the work required in Task Order No. 35, the Olin Partnership was issued existing background drawings by the National Park Service.

The background drawings provided by the Park Service provided no information concerning the existing subsurface conditions at the Project. Although a June 10, 2002 subsurface investigation report was prepared pursuant to Task Order No. 22 (for use in designing the new security wall and proposed Visitor Facility), this report did not provide any information concerning the unforeseen conditions which are the subject of this claim. Given these facts, and since the Contract contained a standard Government Differing Site Conditions clause, Grunley-

[1] The Olin Partnership was Grunley-Walsh's design consultant for the work required in Task Order No. 35.

Walsh reasonably believed they would be provided and equitable adjustment for unknown differing site conditions, when and if they were encountered.

On this Project, there have been numerous instances where differing site conditions were encountered and contract modifications were issued for the additional costs involved. For example: in Modification No. 7 (Item k) Grunley-Walsh was compensated $80,785 due to unforeseen differing site utility conditions; in Modification No. 8 (Item A.11) we were again compensated for unforeseen differing site utility conditions; and in Modification No. 9 (Item F) compensation was recognized for removal of an unforeseen subsurface Verizon vault "not shown on the background drawings."

The issues in this claim are all similar in nature; stemming from unforeseen differing conditions, which were not depicted nor indicated in the background drawings and/or in the contract drawings. Further, each of the issues involves and item of additional work, required by the Park Service, that our subcontractor, Cherry Hill Construction, was required to perform to resolve the differing conditions.

**1. RCO 950.62 – Bridging Footer Over Abandoned Steam Tunnel at Southwest Ramp:**

As the Park Service is aware the background drawings indicated an underground abandoned heat and power tunnel running from existing vaults adjacent to the Washington Monument to the outside of the existing Survey Lodge Building. Research done by Grunley-Walsh has revealed this tunnel, which was built in 1884, served the steam elevator engine system for the Monument. In 1923, however, the tunnel was de-activated when the Washington Monument was rewired to receive electricity from a local power company.




The existing condition of the power tunnel, since de-activation, was unknown to all parties. During design development, the Park Service made no indication the tunnel needed to be preserved or protected when construction started. Further, the scope of work set forth in Task Order No. 35 required no work in connection with this abandoned power tunnel. It was simply an existing feature on the contract drawings, about which no other information was provided (e.g. whether the tunnel was collapsed, where the tunnel was terminated, how the tunnel was terminated, the size of the tunnel and any necessary precautions that might arise because of the tunnel).

The new design for the project, contemplated security walls crossing over the abandoned tunnel in a total of two locations. Further, the design depicted the depth of the footings for these walls, but the design did not indicate the depth of the abandoned tunnel. As it turned out, the roof of the subsurface abandoned tunnel conflicted with the depth of the underground security wall footings in two locations at the Southwest ramp.[2]




Contract Drawing L5.2 Excerpt.

In the summer of 2004, when the excavation for the security wall footings at the Southwest ramp was being performed, the conflict with the roof of the abandoned tunnel was discovered. At the time, the discovery of the tunnel was immediately brought to the attention of

[2] There were several other power/steam tunnels depicted on the back ground drawings. The other tunnels, however, were at a depth that did not conflict with the footings for the new security walls around the Monument.

the Park Service's representatives, Mike Giller, Shean Kennealy and Steve Sims. To deal with the issue, the consulting structural engineer issued a sketch on July 7, 2004 (copy attached as **EXHIBIT 2**). As illustrated below, an elaborate concrete bridge had to be constructed over the tunnel, before the footings for the new security wall could be placed.






8/17/2004 Security Wall Conflict at Tunnel Roof




8/17/2004 Concrete Formwork Around Tunnel Roof




8/17/2004 Concrete Formwork Around Tunnel Roof




8/17/2004 Concrete Placement Around Tunnel Roof